**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| IDA SMITH | CIVIL ACTION NO. 04-2236 |
| VERSUS | JUDGE S. MAURICE HICKS, JR |
| WALTER W. GERHARDT, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court are three Motions for Summary Judgment. See Record Documents 38, 40, & 44. The first motion, filed by defendant Walter W. Gerhardt, seeks dismissal of all of plaintiff Ida Smith's claims, or in the alternative, partial summary judgment on the issue of damages. See Record Document 38. The second motion, filed by defendants Federal National Mortgage Association and Regions Bank, seeks dismissal of all of plaintiff Ida Smith's claims. See Record Document 44. The third motion, filed by third party defendant Dean Morris, L.L.P., seeks dismissal of the third party action, as well as the principal action from which its potential exposure arises. See Record Document 40.

Plaintiff Ida Smith has filed opposition and supplemental opposition briefs in response to all of the aforementioned Motions for Summary Judgment. For the reasons which follow, the Court grants the Motions for Summary Judgment (Record Documents 38, 40, & 44) filed by the original defendants and the third party defendant in the instant action, resulting in the dismissal of all of plaintiff Ida Smith's claims and all of defendants Federal National Mortgage Association's and Regions Bank's third party claims against third party defendant Dean Morris, L.L.P.

## I. BACKGROUND.[1]

On July 28, 1997, Dean Morris, L.L.P. ("Dean Morris"), on behalf of its client, the Federal National Mortgage Association ("Fannie Mae"), filed a petition for executory process in the First Judicial District Court, Caddo Parish, Louisiana. Dean Morris sought to seize and sell plaintiff Ida Smith's ("Smith") home in order to satisfy her unpaid mortgage obligations. Smith's house was located at 549 East 72nd Street in Shreveport, Louisiana. Fannie Mae's petition requested service on Smith at 549 East 72nd in Shreveport. Yet, on July 31, 1997, before service could be effected, Dean Morris contacted the Caddo Parish Sheriff's office and asked that service be made on Smith at 510 East 72nd Street, Shreveport, Louisiana, a wholly different address. The sheriff's office was unsuccessful in its attempt to serve Smith at this new address.

On September 2, 1997, Smith filed for Chapter 13 bankruptcy relief. As a result of filing the bankruptcy proceeding, the executory process proceeding was automatically stayed by pursuant to 11 U.S.C. § 362(a). Smith's bankruptcy case proceeded. On November 19, 1997, a debt repayment plan was confirmed by the bankruptcy court. Yet, on November 24, 1999, Smith's bankruptcy proceeding was dismissed for her failure to make the required payments under the plan. Due to the dismissal, the automatic stay was lifted.

---

[1]On September 1, 2005, defendant Walter W. Gerhardt ("Gerhardt") filed his "Statement of Uncontested Facts" in support of his Motion for Summary Judgment. See Record Document 38-2. On September 16, 2005, plaintiff Ida Smith filed her response the aforementioned "Statement of Uncontested Facts" and admitted each and every fact except those stated in paragraphs 11 and 20 of Gerhardt's "Statement of Uncontested Facts." Therefore, this Court has essentially adopted Gerhardt's "Statement of Uncontested Facts."

On August 31, 2000, Dean Morris, again on behalf of Fannie Mae, filed an amended petition and writ of seizure and sale in the aforementioned executory process proceeding, thereby reasserting its claims against Smith. Dean Morris unsuccessfully attempted service on Smith at 510 East 70th Street, Shreveport, Louisiana. Fannie Mae then presumed that Smith was an absentee and, on October 17, 2000, it moved the court to appoint a curator ad hoc to accept service on Smith's behalf in the executory proceeding. On October 18, 2004, Walter W. Gerhardt ("Gerhardt") was appointed by the court as Smith's curator ad hoc.

On November 7, 2000, Gerhardt sent Smith a letter, via certified mail return receipt requested, to 549 East 72nd Street, Shreveport, Louisiana, the address that had originally been included in the petition. The letter informed Smith of the executory proceeding and enclosed a copy of the petition. In his letter, Gerhardt stated:

> Please be advised that I have been appointed by the First Judicial District Court as Curator on your behalf regarding the above-referenced lawsuit. Your service copy of that lawsuit is enclosed herewith.
>
> This is a lawsuit for executory process, to collect an alleged debt owed the plaintiff, Federal National Mortgage Association. You have the right to hire and attorney to represent your interests in this matter, but you should do so immediately if that is your desire.
>
> Please feel free to contact either the Court or me regarding this matter. I may be reached at the address and telephone number listed above.

On November 15, 2000, Smith acknowledged receipt of the letter by signing the return receipt. On November 20, 2000, Gerhardt filed an Answer of Curator, wherein he stated that he had sent the petition to Smith; that he had proof of her receipt of the same; and that she had called him to discuss the matter. A copy of Gerhardt's Answer of Curator was served by mail on Dean Morris, counsel for Fannie Mae.

On December 5, 2000, before any further action could be taken in the executory proceeding, Smith commenced a second Chapter 13 bankruptcy proceeding. On June 17, 2003, the second bankruptcy proceeding, however, was dismissed for Smith's failure to make the requisite plan payments. On August 4, 2003, Dean Morris, on behalf of Fannie Mae, filed a second amended petition in the executory process proceeding and purportedly served Smith with the same through Gerhardt. The only difference between the first and second amended petitions was the amount allegedly owed on the debt, which was decreased to reflect payments that had been made by Smith in the course of her second bankruptcy proceeding. Gerhardt maintains that he never received notice of the second amended petition. Smith maintains that the court records indicate that Gerhardt was served with a copy of the second amended petition. On September 24, 2003, the subject property was sold at a sheriff's sale, and on October 25, 2003, Smith was evicted.

On September 24, 2004, Smith filed suit in the First Judicial District Court, Caddo Parish, Louisiana, against Gerhardt; Regions Mortgage Incorporated ("Regions"), which originated the mortgage; and Fannie Mae. In her petition, Smith alleged that Regions and Fannie Mae had wrongfully seized her property. With respect to Gerhardt, she alleged he had failed, in his capacity as her curator ad hoc, to provide her with notice of Fannie Mae's second amended petition and the impending seizure and sale of her home.

On October 14, 2004, Gerhardt answered Smith's petition, denying any liability in connection therewith, and on October 28, 2004, the defendants removed the case to this Court. On December 20, 2004, Regions and Fannie Mae answered Smith's petition, and asserted a third-party demand against Dean Morris.

Gerhardt filed his Motion for Summary Judgment on September 1, 2005, seeking

dismissal of all of plaintiff Ida Smith's claims, or in the alternative, seeking partial summary judgment on the issue of damages. See Record Document 38. Dean Morris filed its Motion for Summary Judgment on September 19, 2005, seeking dismissal of the third party action, as well as the principal action from which its potential exposure arises. See Record Document 40. Fannie Mae and Regions Bank filed their Motion for Summary Judgment on September 26, 2005, seeking dismissal of all of plaintiff Ida Smith's claims. See Record Document 44.

## II. LAW AND ANALYSIS.

### A. Summary Judgment Standard.

Under Rule 56, summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); see also Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 477 U.S. at 323-25, 106 S. Ct. at 2552).

If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075); see also S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), as revised on denial of rehearing, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S. Ct. 2505, 2511 (1986). When the nonmovant has the burden of proof at trial, he "must come forward with evidence which would be sufficient to enable it to survive a motion for directed verdict at trial." Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996). If the nonmovant can not meet this burden, then "the motion for summary judgment must be granted." Id.; see also Little, 37 F.3d at 1076.

**B.    Motion for Summary Judgment Filed by Defendant Walter W. Gerhardt.**

Smith alleges that Gerhardt failed, in his capacity as her curator ad hoc, to provide her with notice of Fannie Mae's second amended petition and the impending seizure and sale of her home.  Smith contends that Gerhardt is liable to her for legal malpractice, in that "Gerhardt owed a duty to petitioner to notice her of the seizure and sale of her home, but breached that duty when [her] residence was sold on September 24, 2003, without her knowledge."  Record Document 1, ¶ 20.

At the outset the Court notes that there is a factual dispute as to whether Gerhardt was served and/or received notice of Fannie Mae filing a second amended petition in the executory process proceeding.  Gerhardt maintains that he never received notice of the second amended petition.  Smith maintains that the court records indicate that Gerhardt was served with a copy of the second amended petition.  Yet, as set forth below, the Court finds that this factual dispute does not amount to a genuine issue of material fact precluding the award of summary judgment.  Simply put, regardless of whether Gerhardt received notice of the second amended petition, Smith's claim against Gerhardt for improper and/or insufficient service cannot survive summary judgment.

There is no dispute that Louisiana law requires that notice be given to the debtor before the sheriff can execute a writ of seizure and sale.  See La. C.C.P. Art. 2721.[2]  Under Louisiana Revised Statute 13:3852, the notice must provide "the date of the first scheduled sale of the property."  Louisiana case law also provides that "the codal articles pertaining

---

[2] Article 2721 provides that "the sheriff shall seize the property affected by the mortgage, security agreement, or privilege immediately upon receiving the writ of seizure and sale" and further states that "the sheriff shall serve upon the defendant a written notice of the seizure of the property."

to writ of sale and seizure do not provide for an expiration date." Turner v. Associates Commercial Corp., 03-CA-0224 (La.App. 5 Cir. 10/28/03), 860 So.2d 244, 246.

This Court is also cognizant of federal case law addressing the relationship between executory process proceedings and bankruptcy proceedings. In Vega v. Gasper, 36 F.3d 417 (5th Cir. 1994)), the Fifth Circuit stated that "[s]uits against the debtor commenced before bankruptcy or on pre-petition claims are stayed" pursuant to the Bankruptcy Code, specifically 11 U.S.C. § 362(a). Id. at 421-422. The Vega court also recognized the principle that "[a]n order which lifts the automatic stay returns the parties to the legal relationships which existed before the stay became operative." Id. at 422, citing Matter of Winslow, 39 B.R. 869, 871 (Bank.N.D.Ga.1984).

Chase Manhattan Mortgage Corp. v. Lassiter, 04-CA-484 (La.App. 5 Cir. 11/30/04), 889 So.2d 1155, gives this Court further guidance as to the interplay between state executory process proceedings and federal bankruptcy law. In Chase Manhattan Mortgage Corp., Lassiter, the debtor, argued on appeal that the trial court erred in denying her motion to annul the sale of her property on the basis that Chase Manhattan Mortgage Corporation ("Chase") had not provided proper notice to her of a second sale date. See id. at 1156. There was no dispute that Chase gave proper written notice to Lassiter that indicated the initial date of the judicial sale. See id. at 1157. Yet, Lassiter insisted "that the onus was upon Chase to issue subsequent notice to her at the time that the judicial sale was rescheduled after her second petition for bankruptcy was dismissed." Id. The appellate court noted that "Louisiana's provisions for notice to a debtor in the event of seizure are designed to ensure that the debtor has service of a written notice of seizure that informs them of the first scheduled sale date" and that such standards comport with the actual

notice requirement of Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706 (1983). Id. at 1158. Simply put, the appellate court found "no authority under Louisiana law that would require Chase to provide [Lassiter] with notice of a rescheduled judicial sale." Id. at 1158.

Based on this reasoning alone, Gerhardt argues that Smith was provided with sufficient notice, under both Louisiana and federal law, of Fannie Mae's intent to seize and sell her property, notwithstanding her intervening bankruptcies. Smith has admitted that on November 13, 2000 she received notice of Fannie Mae's intent to seize and sell her property via Gerhardt, her court-appointed curator ad hoc. See Record Document 38, Exhibit A at ¶ 12; Exhibit B. This fact is also established by the Answer of Curator, which Gerhardt filed on November 20, 2000, and Smith's decision, in line with Gerhardt's November 7, 2000 letter, to retain a bankruptcy attorney to file two Chapter 13 bankruptcy proceedings to "save her home." See id., Exhibits A at ¶ 13; B & C.

Smith attempts to counter Gerhardt's argument that Smith is not entitled under the law to notice of a rescheduled judicial sale with Louisiana Code of Civil Procedure Article 5094, which states:

> When an attorney at law is appointed by the court to represent a defendant who is a nonresident or an absentee, the attorney shall use reasonable diligence to communicate with the defendant and inform him of the pendency and nature of the action or proceeding, and of the time available for the filing of an answer or the assertion of a defense otherwise.

La.C.C.P. Art. 5094. Smith also relies on rules of professional conduct and local practice to argue that Gerhardt should have served Smith with a copy of the second amended petition. Smith also attempts to distinguish the Chase Manhattan Mortgage Corp. case on the grounds that its "holding may be applicable to the seizing creditor but provides no relief

for the curator ad hoc." Record Document 39 at 8. Smith also notes that there was "a relatively short period of time between service of the petition, dismissal of bankruptcy and seizure and sale" in the Chase Manhattan Mortgage Corp. case, while there was a "33 month gap between notice to . . . Smith of the First Amended Petition . . . and the service of the Second Amended Petition upon the curator" ad hoc. Id. at 7-8.

The Court is unimpressed by Smith's arguments. Smith has simply failed to demonstrate that Gerhardt did not exercise reasonable diligence or, that if he did not exercise reasonable diligence, that his actions caused her damages. Comment (b) to Louisiana Code of Civil Procedure Article 5095, which states:

> Defenses to an executory proceeding may be raised only through the action to enjoin the seizure and sale, or through a suspensive appeal. The appointed attorney has no legal authority to act for the person he is representing by exercising either remedy. **His sole function in an executory proceeding is to receive service of all process and to notify the defendant of the pendency of the proceeding.**

La.C.C.P. Art. 5095, Comment (b) (emphasis added). Further, in Wright v. Waguespack, 2002-CA-0603 (La.App. 1 Cir. 12/20/02), 836 So.2d 436, the court stated that "[t]he basic purpose of a curator ad hoc is to represent the interests of and to attempt to locate the absent defendant." Id. at 438. The Wright court found that where the curator ad hoc had sent certified letters to the last known address she was provided and the addresses of the debtor's other properties, the curator ad hoc had met the standard of reasonable diligence. See id. at 439. However, the court went on to note that even if the aforementioned actions of the curator ad hoc had not met the standard of reasonable diligence, summary judgment in favor or the curator ad hoc was still warranted due because the debtor "failed to offer sufficient evidence to prove that [the curator ad hoc's] alleged substandard conduct was

a cause in fact or a legal cause of his injuries." Id.

The last quote from the Wright case is critical to the instant matter. As stated by Gerhardt, even if this Court assumes that Gerhardt had a duty as curator ad hoc to notify Smith of the rescheduled sale date of her home, Smith cannot demonstrate with competent summary judgment evidence that Gerhardt's alleged breach of this duty caused her to lose her home.

In her November 1, 2005 deposition, Smith essentially admitted that she knew her third bankruptcy proceeding had been dismissed and that the stay of the executory process proceeding was no longer in effect; that she knew the mortgagee was, therefore, free to sell her home at any time pursuant to the previously entered writ of seizure and sale; and that she had actual notice of the impending sale of her home on September 24, 2003, but failed to take any action to avert the same. See Record Document 85 at 2. In her deposition, Smith recalled her three bankruptcy proceedings and stated that her desire in each of those proceedings was to "save her home." See id., Exhibit A at 14, 15. Smith also admitted that, following the dismissal of her second bankruptcy proceeding, she received a letter from Gerhardt, via certified mail return-receipt. See id. at 18-20. She also remembered that a copy of the petition for seizure and sale filed by her mortgagee was included with Gerhardt's letter. See id. Smith stated that she knew that once she received these papers, her house was going to be sold if she did not do something. See id. at 20. The deposition transcript speaks for itself:[3]

    Q.    Okay? All right. Now, and why you got those papers you knew that

---

[3] At this stage in the deposition, Smith was being questioned by Herschel E. Richard, Jr., counsel for Gerhardt.

> your house was going to be sold if you didn't do something, right?
> A. That's right.
> Q. Okay. And what you did was you contacted [another attorney] Mr. Malloy?
> A. That's right.
>
> . . . .
>
> Q. And Mr. Malloy is a bankruptcy lawyer. He specializes in bankruptcy.
> A. Uh-huh.
> Q. And he filed what would be now the third bankruptcy; is that right?
> A. That's right.
> Q. And, and by this time you knew that if you didn't complete your bankruptcy –
> A. Uh-huh.
> Q. – the next think that was going to happen was going to be they were going to seize, seize your house and try to sell it again, right.
> Mr. Cameron: Object to form.
> A. Uh-huh.
> Q. Excuse me? You need to answer me out loud.
> A. Yes.
> Q. Okay. All right. Now, did you complete that bankruptcy?
> A. No, I did not.
>
> . . . .
>
> Q. . . . you knew that in 2003 your bankruptcy had been dismissed?
> A. Yes, I know.
> Q. And the reason it was dismissed is that you failed to make the payments that you were supposed to make?
> A. That's right.
> Q. And you knew that when you had, when the bankruptcy was dismissed that at any time your, the mortgage company could seek to seize and sell your house once again.
> A. Yes.
> Q. Okay. Did you do anything to keep that from happening?
> A. I called Mr. Molloy and told him I had lost my job.
> Q. Uh-huh.
> A. And it was coming up on Thanksgiving and he said, oh, I'm sorry to hear that. He said, but when you get a job to call me. So in three months I got a job, and I called him; but then the, it was dismissed.
> Q. Okay. The bankruptcy was dismissed?
> A. Uh-huh. When I got my job.
> Q. And you knew at that time that if some action wasn't taken that your house could be seized and sold.
> A. Yes.

Id. at 20-23. Smith further testified in her deposition that her sister-in-law brought the

impending sale to her attention.[4]

> Q. Now, Ms. Smith, you said that you had read in the newspaper, in the legal notices section about information about your house; is that right.
> A. That's right.
> Q. And did you read in those legal notices that your house was being seized and sold?
> A. My sister-in-law read it.
> Q. Okay.
> A. And she called me on the phone.
> . . . .
> Q. I'm going to show you a document, its at the top of the page it says Shreveport, the Times, Lake Street, Shreveport, Louisiana, and then it has August 22, 2003, September 19, 2003, sheriff's sale number 4253000, Federal National Mortgage versus Oliver Lee Smith. And would you look at that, copy of that notice from the Times and tell me if that's the notice that your sister-in-law brought to your attention?
> A. Well, she told me about it but I never did see it.

Id. at 69; Exhibit 38 attached to Exhibit A.

Based on this deposition testimony, Smith cannot show that Gerhardt's alleged substandard conduct was a cause in fact or a legal cause of her damages. See Fontenot v. Duplechine, No. 04-424 (La. App. 4th Cir. 12/8/04), 891 So. 2d 41 ("In a tort action, plaintiff bears the burden of proving by a preponderance of the evidence both the injury and a causal connection between the injury and the tort"). Accordingly, Gerhardt is entitled to summary judgment.

**C.  Motion for Summary Judgment Filed by Defendants Federal National Mortgage Association and Regions Bank.**

Smith alleges that Regions and Fannie Mae wrongfully seized and sold her property. She argues not only that she did not receive proper notice of the seizure and sale of her property, but also that Regions and Fannie Mae were not entitled to proceed with the

---

[4] Again, at this stage in the deposition, Smith was being questioned by Herschel E. Richard, Jr., counsel for Gerhardt.

foreclosure of her property because she had paid, in full, the debt owed to Regions and Fannie Mae.

As set forth above in relation to this Court's ruling on the Motion for Summary Judgment filed by Gerhardt, Smith's claim for damages related to improper and/or insufficient notice can not survive summary judgment. At the trial of this matter, Smith would bear the burden of proving that the seizure and sale of her property was unwarranted and that it was the actions of Regions and Fannie Mae that caused her damages. By her own admissions, Smith concedes that she knew her third bankruptcy proceeding had been dismissed; that the stay of the executory process proceeding was no longer in place; that the mortgagee was, therefore, free to sell her home; and that she had actual notice of the impending sale of her home, but failed to take any action to stop the sale. See Record Document 85, Exhibit A at 20-23; 69; & Exhibit 38 attached to Exhibit A. These admissions clearly evidence that Smith had actual notice of the impending sale and that she cannot prove causation, that the actions of Regions and Fannie Mae pertaining to notice caused her damages. Accordingly, Regions and Fannie Mae are entitled to summary judgment on Smith's claims related to the wrongful seizure and sale of her property due to improper and/or insufficient notice.[5]

---

[5]Further, in her opposition to Gerhardt's Motion for Summary Judgment, Smith states:

> Plaintiff shows that while Article 2721 in facts states that a defendant is entitled to notice of the first scheduled sale, that is a defense of the seizing creditor . . . ."

Record Document 39 at 2. With this statement, Smith seems to concede that Regions and Fannie Mae have a valid defense to her claim against them based on improper and/or insufficient notice.

Smith's claim that Regions and Fannie Mae were not entitled to proceed with the foreclosure of her property because she had paid, in full, the debt owed to Regions and Fannie Mae also fails. Specifically, Smith alleged in her petition that when Fannie Mae filed the second amended petition in the executory process proceeding, she had already paid the entire balance on the mortgage. See Record Document 1, ¶ 14. Smith also alleged that Regions and Fannie Mae were "further liable for alleging [she] owed more on her mortgage than she did, causing the foreclosure in the first instance." Id., ¶ 19. In her opposition brief and her supplemental opposition brief, Smith again made similar arguments and also alleged that Regions charged excess attorney's fees and that Regions and Fannie Mae misapplied escrow payments. See Record Documents 70-1 & 109.[6]

Even if this Court assumes for purposes of the instant Memorandum Ruling that Regions and Fannie Mae were not entitled to proceed with the foreclosure of Smith's property because she, in fact, owed no money to Regions and Fannie Mae,[7] her claim

---

[6] In her supplemental opposition brief, Smith attempts to expand the scope of the pleadings to include new causes of action against Regions and Fannie Mae that "the allegations of the original Petition will not support." Record Document 134 at 1. These causes of action include a Truth in Lending Act claim, a breach of contract claim, a negligence claim under Louisiana Civil Code Article 2315, a claim under La. R.S. 10:1-203 for breach of duty of good faith and fair dealing, and an abuse of process claim under Louisiana Civil Code Article 2315. See Record Document 109.

In their reply brief, Regions and Fannie Mae move the Court to strike this "smorgasbord of causes of action." Record Document 134 at 1-2. The Court agrees that Smith's allegations in her original Petition do not support the aforementioned causes of action and, accordingly, the motion to strike contained in Regions' and Fannie Mae's reply brief is **GRANTED**.

[7] While the Court has made such assumption for purposes of the instant Memorandum Ruling, it notes its doubt that Smith can establish, with competent summary judgment evidence, that there is a genuine issue of material fact that she owed no money

against Regions and Fannie Mae still fails. In First Guaranty Bank v. Wells, 509 So.2d 122 (La.App. 1 Cir. 1987), defendants argued on appeal that the trial court erred in dismissing their demand for damages due to First Guaranty Bank's alleged wrongful seizure and sale of their property. See id. at 124. Defendants argued that the seizure had been wrongful because the note was not in arrears and made a claim for damages for wrongful seizure based on their "valid defense of payment." Id. Yet, defendants had raised no objections or defenses at the time of the executory proceedings and asserted no other defects in the executory proceedings. See id. The appellate court reasoned that the "defendants [had] failed to avail themselves of procedural protections which the law provide[d] to debtors in executory proceedings." Id. The court specifically cited Louisiana Code of Civil Procedure Article 2642[8] and further stated that "it [was] well-settled that all defenses and procedural objections to an executory process proceeding are waived if the debtor permits the seizure and sale to proceed without raising any objection by either a suit for injunction or a suspensive appeal." Id. Based on this reasoning, the court held that the defendants had "waived any defense of payment which they might have had in the executory proceedings on the . . . note" and that their alleged defense of payment could not form the basis of a suit for damages. Id.

In the instant case, Smith herself admits that she knew her third bankruptcy proceeding had been dismissed; that the stay of the executory process proceeding was no

---

to Fannie Mae.

[8]Article 2642 states, in pertinent part, that "[d]efenses and procedural objections to an executory proceeding may be asserted either through an injunction proceeding to arrest the seizure and sale . . . , or a suspensive appeal from the order directing the issuance of the writ of seizure and sale, or both."

longer in place; and that Regions and Fannie Mae were free to sell her home. See Record Document 85, Exhibit A at 20-23. She further concedes that she had actual notice of the impending sale of her home, but failed to take any action to stop the sale. See id., Exhibit A at 69 & Exhibit 38 attached to Exhibit A. These admissions demonstrate that Smith failed to avail herself of the procedural protections afforded to her as a debtor by Louisiana law during executory proceedings. Simply put, Smith waived her defense of payment when she permitted the seizure and sale of her home to go forward, despite having actual notice and without raising any objection by either a suit for injunction or a suspensive appeal. Due to this waiver, Smith can not now use her defense of payment as a basis for a claim for damages. Regions and Fannie Mae are entitled to summary judgment as to Smith's claim that they were not entitled to proceed with the foreclosure of her property because she had paid, in full, the debt owed to them.

### D. Motion for Summary Judgment Filed by Third Party Defendant Dean Morris, L.L.P.

Dean Morris was brought into this suit through a third party demand by Regions and Fannie Mae. Specifically, Regions and Fannie Mae stated in their third party demand:

> [T]hird-party plaintiffs show that, in the event it is ultimately determined by a court of competent jurisdiction that the seizure and sale which forms the basis of the main demand was not performed in accordance with all applicable laws, which is denied, then third-party plaintiffs show that the losses suffered by Ida Smith are due to the fault, negligence and/or breach of duty of third-party defendant, and third-party plaintiffs are therefore entitled to complete indemnification from third-party defendant for any losses or damages for which third-party plaintiffs may be cast as well as damages sustained by third-party plaintiffs in defending this suit, including attorney's fees.

Record Document 14, ¶ 34. Also, Dean Morris was not made a party to the main demand. Thus, there is no dispute that Dean Morris' potential liability in this matter is based solely

upon a claim for indemnification by Fannie Mae and Regions.

This Court finds that it need not address the merits of Dean Morris' Motion for Summary Judgment. The Court has ruled that Regions and Fannie Mae are not liable to Smith on the principal demand in the instant matter. Thus, because Regions and Fannie Mae are not liable on the principal demand, their third party demand against Dean Morris seeking indemnity is not viable. This reasoning is in line with Regions' and Fannie Mae's third party demand, as their demand stated a claim against Dean Morris only "in the event it is ultimately determined by a court of competent jurisdiction that the seizure and sale which forms the basis of the main demand was not performed in accordance with all applicable laws." See id.

The Court also looked to case law for guidance. In Davis v. Asset Services, 46 F.Supp.2d 503 (M.D.La. 1998), a district court was faced with a factually similar case. In Davis, the defendant brought a third party demand against Ochsner seeking indemnification should the plaintiffs succeed on the main demand. See id., at 504. The Davis plaintiffs did not assert any direct claims against Ochsner. See id. Ochsner moved for summary judgment. See id. In ruling on Ochsner's motion for summary judgment, the court stated:

> Since Ochsner was brought into this suit through a third party demand by [the defendant] and Ochsner was not made a party to the main demand, this court needs not go into the merits of Ochsner's claim. [The defendant] is not liable [on the main demand]. Therefore, Ochsner is also not liable and therefore, is entitled to judgment as a matter of law on the third party demand.

Id. at 510.

Based on this reasoning, the Court finds that summary judgment in favor of Dean

Morris on the third party demand is appropriate, as Dean Morris' potential liability in this matter is based solely upon a claim for indemnification by Fannie Mae and Regions; Fannie Mae and Regions are not liable on the principal demand; and, therefore, Dean Morris is also not liable.[9]

### III. CONCLUSION.

Based on the foregoing, the Court finds that there are no genuine issues of material fact and that summary judgment is appropriate as a matter of fact and law in this case. Accordingly, the Motions for Summary Judgment (Record Documents 38 & 44) filed by defendants Walter W. Gerhardt, Federal National Mortgage Association and Regions Bank and the Motion for Summary Judgment (Record Document 40) filed by third party defendant Dean Morris, L.L.P. are **GRANTED**. Plaintiff Ida Smith's claims are dismissed with prejudice. Regions and Fannie Mae's third party claims against Dean Morris are likewise dismissed with prejudice.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 15th day of September, 2006.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

[9]As Dean Morris was not made a party to the principal demand, the grant of summary judgment in favor of Dean Morris on the third party demand has no impact on any direct claims Smith could potentially assert against Dean Morris.